**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DERRICK MARTIN KING, | ) | |
| v. | ) | Civil No. 26-1749 |
| SANDRA DUGGAN, et al., | ) | |

**MEMORANDUM OPINION**

On September 1, 2026, the court issued a show cause order (ECF No. 3) to pro se plaintiff Derrick Martin King ("King"). King filed a response (ECF No. 4). Defendants Sandra Duggan, et al., (six attorneys appointed to the Plaintiffs Leadership Committee by this court in IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION (the "Philips MDL")[1], MDL No.3014, Misc. No. 21-1230, and their respective law firms), were given an opportunity to respond by October 6, 2026, but were not required to do so. No responses have been received from Defendants.

The court ordered King to show cause why his motion to proceed in forma pauperis ("IFP") (ECF No. 1) should not be denied and why this case should not be dismissed with prejudice. King was ordered to file his response "on or before September 22, 2026." (ECF No. 3 at 2). King failed to do so. His response was not filed until September 24, 2026. The court takes judicial notice that September 22, 2026 was a Tuesday and was not a federal holiday. King

[1] This case, Civil Action No. 26-1749, was transferred to this member of the court because it is apparent on its face that it is related to the Philips MDL (ECF No. 2).

provided no explanation (let alone good cause) for his failure to comply with the court's deadline.

Even if the court were to consider King's untimely response, it is unpersuasive. King's primary response to the show cause order is a renewed motion for this member of the court to recuse and an attempt to cherry-pick the judge to whom King wishes the case to be reassigned (ECF No. 4 at 1, 13-17). On January 22, 2026, the court issued an opinion and order (Misc. No. 21-1230, ECF Nos. 4064, 4065) denying King's first motion for recusal filed at the Philips MDL. The court adopts and incorporates that opinion and order. King, again, failed to identify any reason for an objective observer to question the impartiality of this member of the court. King's motion for recusal will be denied.

The United States Court of Appeals for the Third Circuit delineated a six-factor test to guide a district court's determination of whether the involuntary dismissal of a case is appropriate. *See Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863 (3d Cir. 1984). The *Poulis* factors are: (1) the extent of the party's personal responsibility; (2) prejudice to the adversary; (3) the history of the party's dilatoriness; (4) whether the attorney's conduct was willful or in bad faith; (5) alternative sanctions; and (6) whether the claim is meritorious. *Id.* at 868-870. All six factors need not be met to warrant dismissal. *Hicks v. Fenney*, 850 F.2d 152 (3d Cir. 1988).

Applying the first *Poulis* factor, as a pro se plaintiff, King is entirely responsible for his conduct. Second, Defendants would be prejudiced by having to spend time and money to defend themselves against claims that lack merit (as discussed below). Third, the court notes King's history of dilatoriness in the Philips MDL, which resulted in dismissal with prejudice of King's case for failure to comply fully with the court's orders with respect to the deadlines under the

Docket Management Order and show cause orders and his failure to show good cause for the failure to cure the deficiencies. *See* Opinion and Order dated March 26, 2026 (Misc. No. 21-1230 ECF Nos. 4185, 4186). The court commented: "The third factor, a history of dilatoriness, weighs against King because it is abundantly clear that King had numerous opportunities to comply with the court's orders and he did not do so." (ECF No. 4185 at 8). Fourth, the court makes no finding with respect to whether King is acting in bad faith. Fifth, alternative sanctions to dismissal would not cure the prejudice to defendants if this case were to proceed.

Sixth, the claims are not meritorious. King seeks to assert claims for common law professional malpractice against attorneys on the Plaintiffs' Leadership Committee in the Philips MDL and their respective law firms. In the show cause order, the court cited the decision in *Casey v. Denton*, No. 3:17-CV-00521, 2018 WL 4205153 (S.D. Ill. Sept. 4, 2018), which dismissed with prejudice similar breach of fiduciary duty and respondeat superior claims against MDL leadership counsel and their law firms and commented: "To find otherwise and hold leadership counsel responsible in the traditional fiduciary sense for the full breadth of responsibilities owed to each and every MDL plaintiff, would be to make such leadership positions unmanageable and unworkable." *Id.* at *6.

King's response recognizes that in *Casey*, the court dismissed with prejudice similar breach of fiduciary duty claims against MDL leadership counsel (ECF No. 4 at 17). King does not argue that *Casey* was wrongly decided, but merely comments that the court "must review the entire case." *Id.* at 18.

The only decision cited by King, *State of New Jersey Department of Environmental Protection v. Gloucester Environmental Management Services, Inc.*, 138 F.R.D. 421 (D.N.J. 1991), actually undercuts his position. The discussion cited by King involved a dispute about the

"thoroughness of billing information supporting Liaison Counsel's fee application." *Id.* at 429. The court looked to the Rules of Professional Conduct with respect to fees and billing arrangements, by analogy, to resolve the dispute. The court recognized that "the relationship between Liaison Counsel and group members is not an attorney-client relationship." *Id.* at 430. The court explained that members do not "retain" the Liaison Counsel to represent them in the litigation. *Id.* at n. 13. That case provides no support for the breach of fiduciary/legal malpractice claims King seeks to assert against MDL leadership counsel in this case. King did not "retain" the defendants to represent him in the Philips MDL.

King quotes at length from two legal commentators, Charles Silver, The Responsibilities of Lead Lawyers and Judges in Multidistrict Litigations, 79 Fordham L. Rev. 1985, 1987-90 (2011); and Howard M. Erichson, What MDL and Class Actions Have in Common, 70 Vand. L. Rev. En Banc 29, 29-30 (2017) (ECF No. 4 at 20-23). The commentators discuss general principles related to the fiduciary duties of MDL leadership attorneys, but provide no support for the proposition that those duties can be enforced or asserted in a private lawsuit by a disgruntled MDL litigant. In *Casey*, the court explained that the source of MDL leadership counsel's duties was found in connection with the case management orders issued by the court. *See Casey*, 2018 WL 4205153 at *4-5; *accord In re Fluoroquinolone Prods. Liab. Litig.*, No. 0:15-MD-02642, 2020 WL 1677966, at *2 (D. Minn. Apr. 6, 2020) (rejecting argument that MDL leadership counsel owed a duty to other litigants) ("because the Court finds PTO 4 does not create any duty—fiduciary or otherwise—for Plaintiffs' Leadership to defend case-specific motions, the Chauvins' argument fails. *See Casey v. Denton*, No. 3:17-CV-00521, 2018 WL 4205153, at *4 (S.D. Ill. Sept. 4, 2018) (noting that "[o]ne can only act in a fiduciary capacity, and thus have a fiduciary duty, to the extent his actions comport within the boundaries set by the agreement

initially creating the relationship")). Here, there is no agreement creating a relationship between King and the leadership counsel he named as defendants in this case.

King acknowledges that lead counsel in the Philips MDL were able to procure settlements for economic losses and medical monitoring that benefited all plaintiffs (ECF No. 4 at 23). The gravamen of his complaint is that lead counsel "decided to enter into a private settlement agreement that only benefited certain plaintiffs (leaving the others to fend for themselves)." *Id.* at 23. In other words, even though lead counsel were able to negotiate a settlement of over a billion dollars with Philips on behalf of claimants, they should be forced to defend themselves in court because that settlement did not encompass King's claim.

King's theory of liability directly implicates the concerns expressed in *Casey*. If MDL leadership counsel could be held responsible in the traditional fiduciary sense to each and every MDL plaintiff, that would make such leadership positions "unmanageable and unworkable." 2018 WL 4205153 at *6. Courts (and claimants generally) may lose the benefit of highly skilled attorneys being willing to serve as MDL leadership counsel if those counsel were forced to defend themselves in a series of lawsuits from disgruntled MDL plaintiffs.

Conclusion

For the reasons set forth above, Civil Action No. 26-1769 will be dismissed with prejudice and all pending motions will be denied as moot.

An appropriate order will be entered.

Dated: October 20, 2026

BY THE COURT:

/s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Court Judge